## MOHAWK SAUSAGE & PROVISION CO. et al. v. HYGRADE FOOD PRODUCTS CORPORATION.

### No. 2700.

Circuit Court of Appeals, First Circuit.

Oct. 28, 1932.

Frank L. Simpson, of Boston, Mass., for appellants.

J. N. Welch, of Boston, Mass. (Anthony Brayton and Hale & Dorr, all of Boston, Mass., on the brief), for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

ANDERSON, Circuit Judge.

In this action of contract the jury found for the plaintiff for one dollar. The suit was on a written contract dated June 6, 1928, under which the plaintiff agreed to sell to the defendant its food-product merchandise, and two trucks, at No. 82 North street, Boston, at cost or appraised value, and its bills receivable as listed, guaranteed by the plaintiff. The contract also sets forth that the plaintiff Manning Fendel held a leasehold of No. 82 North street; the fourth paragraph provides that he should "sub-lease the lease for a period expiring December 23, 1929, at the rental per month now payable by said Manning Fendel under said lease." This date was eight days before the termination of Fendel's lease from his landlords.

The controversy arises under the eighth clause, which gives to the defendant an "option to purchase, at any time prior to June 10, 1929, the equipment, machinery, furniture, fixtures and appurtenances constituting the plant of Mohawk as at present equipped and operated, for the sum of $15,000 in cash"; and provides that, pending such purchase the defendant should lease the equipment, etc., at $135 per month. The option was not exercised, but the defendant remained in possession of the premises for the balance of its term.

■ The plaintiff's first contention is that the contract is, on its face, ambiguous, and that evidence should have been admitted to show that, prior to and at the time of the execution, the defendant agreed that if it elected not to exercise its option to purchase the equipment and machinery described in said contract, it would return said equipment and machinery, in place, in No. 82 North street, and surrender possession of said premises to the plaintiff; and also that subsequent to the execution of said contract the plaintiff, by a duly authorized agent, stated that, failing exercise of the option, it would redeliver the equipment and machinery, in place, on the premises, and turn back possession of the premises to the plaintiff; and that it was mutually agreed between the plaintiff and the defendant, subsequent to the execution of the contract, that it should be construed and interpreted as requiring the defendant to surrender possession of said premises unless the option was exercised. In effect, the contention was that the plaintiff should be permitted to show, by parol evidence, that the option really covered the surrender of the sublease as well as the return of the machinery, etc., in good working condition. It should be noted that there was no offer to show a subsequent parol *modification* of the written contract. Such pleaded modification was, at the trial, expressly disclaimed by plaintiff's learned counsel, on the ground that the statute of frauds pleaded by the defendant would bar a claim thus grounded.

We think the court below was plainly right in ruling the contract not ambiguous, in excluding this proffered evidence, and in instructing the jury to find for the defendant on the issue of plaintiff's right to have back possession of the premises. An agreement to return equipment and machinery in a food-manufacturing plant "in as good working condition as when received, ordinary depreciation in the usual course of business excepted," does not involve cancellation of a sub-lease of the premises in which the machinery and equipment are then being used. There is nothing in the record to indicate that the machinery and equipment were so attached to the premises that they could not be taken back by the plaintiff substantially in the condition stated in the eighth paragraph of the contract.

If the plaintiff intended to resume business at the same stand unless defendant bought its entire plant, it utterly failed so to provide. There is no provision for a resale of the trucks to the plaintiff, or for disposing of defendant's stock of merchandise and accounts receivable. The contention of plaintiff's learned counsel is entirely untenable.

■ Under the tenth paragraph of the contract, the defendant agreed to employ the plaintiff Manning Fendel for one year and to pay him $100 per week. The case was referred to an auditor to hear the parties and report on the following questions only:

"1. Was Manning Fendel discharged by the defendant corporation, and, if so, on what date?

"2. If Manning Fendel was discharged by the defendant corporation, was the act of the defendant in discharging him wrongful under the terms of the contract declared on by the plaintiffs?

"3. If Manning Fendel was discharged and if such discharge was a wrongful act on the part of the defendant, what is the amount of damages suffered by Manning Fendel on account of such wrongful discharge?

"4. What amount, if any, is the defendant entitled to recover against the plaintiffs under the defendant's counter claim against the plaintiffs?"

The auditor found that Fendel was unjustifiably discharged, in October, 1928, and was entitled to recover for thirty-three weeks, amounting, with interest to the date of the writ, to $3,366.74. On the auditor's report, deducting the undisputed amount found under defendant's counterclaim of $2,451.31 for breach of plaintiffs' guaranty of the bills receivable, the plaintiffs were entitled to a verdict for $915.43.

But it appeared both before the auditor and before the jury that in March, 1929, Fendel went into business for himself, and the auditor found that he actually lost about $3,500 in said business. The following special questions were submitted to the jury, and were answered as follows:

"1. Was the defendant's discharge of Manning Fendel unjustified? The jury answer Yes.

"2. If the jury in awarding damages have made any deduction for the period in which Manning Fendel was engaged in business for himself, state how much they have deducted on that ground. The jury answer six hundred dollars ($600)."

On the question of the amount of the plaintiff's damages for breach of his contract of employment, the court was requested to instruct the jury as follows:

"The fact that the plaintiff engaged in business for himself in March and April of 1929 does not operate to diminish the damages which the plaintiff is entitled to recover, if the jury find that he was wrongfully discharged, if it appears that the plaintiff lost money in this enterprise, or if it appears that the plaintiff did not earn any money by this effort.

"On all the evidence it appears that the plaintiff lost money by his effort of engaging in business for himself in March and April, 1929."

The court declined to give this ruling, but instructed the jury as follows:

"Part of the time, gentlemen, the defendant [plaintiff] was in business for himself, a matter of about six weeks. It is put to me that you ought to say that that was employment. He said the venture was entirely unsuccessful, that he not only did not make any earnings out of that six weeks, but was actually out of pocket on business losses. And, as a matter of fact, I should think' that was not a deduction. If you think that it ought to be deducted you may do so, if you reach that conclusion."

We think this was error; the third assignment must be sustained. Even though the plaintiff's attempt to make money by going into business for himself was as fruitless as though he had expended a substantial sum on railroad fares, or in advertising for a job, the jury were thus permitted to deduct six weeks' pay from his damages. The rule of damages in such cases is well settled. The plaintiff is entitled to recover the amount of the contract price, less such offsetting income as he actually makes or in the exercise of reasonable diligence he should receive. Fruitless efforts to obtain employment or to make money by engaging in business do not mitigate the damages.

On this record, the second part of the requested instruction, referring to "all the evidence," was properly denied. There is nothing in the bill of exceptions to the effect that all of the evidence is set forth, or even all the evidence material to these exceptions. But there must be a new trial, limited to the question of plaintiff's damages by the breach of his contract of employment.

The judgment of the District Court is vacated, the verdict is set aside, and the case is remanded to that court for further proceedings not inconsistent with this opinion; the appellants recover costs of appeal.